IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRENDA GUERRERO, <br> TDCJ No. #2219014 <br><br> *Plaintiff*, <br><br> v. <br><br> MEDINA COUNTY DEPUTIES BRENT DILLARD and MARK TREVINO, <br><br> *Defendants*. | § § § § § § § § § § § § | 5-17-CV-925-RBF |

## ORDER

Before the Court is the First Amended Motion for Summary Judgment filed by Defendants Medina County Deputies Brent Dillard and Mark Trevino. *See* Dkt. No. 60 (supplemented by Dkt. No. 64). Plaintiff, Brenda Guerrero, has responded, *see* Dkt. Nos. 63 & 69, and Defendants have filed a Reply in support of their motion, *see* Dkt. No. 67. Additionally, Plaintiff Guerrero has filed her fifth Motion for Appointment of Counsel, wherein she also presents a second request to amend her complaint. *See* Dkt No. 73. This Order is entered pursuant to 28 U.S.C. § 636(c), and the District Court's reassignment of this case to the undersigned following the parties' consent to trial by a U.S. Magistrate Judge. Dkt. Nos. 13, 23, 36, & 37.

For the following reasons, Plaintiff Guerrero's Motion for Appointment of Counsel and to Amend, Dkt. No. 73, is **DENIED**, and Defendants' First Amended Motion for Summary Judgment, Dkt. No. 60, is **GRANTED**.

### I. Factual and Procedural Background

This could have been a case about a simple, routine traffic stop. Instead, it involves an approximately twelve-mile-long car chase in which Plaintiff Guerrero led three patrol vehicles—

at varying rates of speed and degrees of recklessness—across county, highway, and private roads, both paved and unpaved. In the end, Guerrero's vehicle damaged two patrol vehicles, and Guerrero sustained minor injuries during her eventual arrest. She now reeks redress through 42 U.S.C. § 1983. The following facts are either undisputed or derived from the Court's review of police videos of the incident in question, which are included in the summary judgment record and to which Guerrero directs the Court's attention. *See* Dkt. No. 60 at Ex. A2.

At approximately 8:30 p.m. on April 8, 2017, Guerrero failed to yield the right of way while driving on a country road in Medina County. Deputy Dillard, who was on duty in a marked patrol vehicle, spotted the infraction. He turned on his lights and attempted to pull Guerrero over. When Guerrero failed to pull over, Deputy Dillard pursued her. He turned on both his siren and lights. He also twice use his vehicle's PA system to order Guerrero to stop. She did not comply and instead chose to flee.

Guerrero's decision to flee was reckless, at best. At various points throughout the ensuing chase, Guerrero waved an arm out of the driver's side window of her vehicle and gestured, presumably at the pursuing Dillard. She later explained on video that she was attempting to inform Dillard that she would pull over later, but just not right then. At one point the video shows her vehicle hit a deer, sending the deer violently cartwheeling off the side of the road. The pursuit covered county, highway, and private roads that were at times populated by other cars. Guerrero's flight was indisputably senseless and dangerous to herself, the pursuing officers, and anyone (or any creature) unlucky enough to be in her vicinity.

In the early stages of the pursuit, the police dispatched a second deputy, Defendant Trevino, to assist. Together, Deputies Dillard and Trevino tried to use their vehicles to box Guerrero in on the highway and shepherd her vehicle to the side of the road. But rather than stop, Guerrero slowed her vehicle down and then abruptly turned onto a private dirt road, avoiding a

locked gate by navigating through a ditch to the side of the gate. The deputies continued their pursuit and, at the end of the private road, cut across a turnabout to intercept Guerrero. As evidenced on video, Guerrero's vehicle slid as it turned, struck one of the pursuing patrol vehicles, and was then struck lightly by a second patrol vehicle.

Undeterred, Guerrero continued to flee in her vehicle. As she drove back towards the entrance to the private road from the highway, a third patrol car attempted to block her exit. Guerrero then veered off the dirt road and into an adjacent field, where all three patrol vehicles resumed their pursuit, with Guerrero's vehicle skidding and spinning out on the grass and gravel surface beside the private dirt road. Guerrero's vehicle struck the third patrol vehicle. She then attempted to leave the property via the ditch through which she had first entered. Her vehicle, however, became stuck in the ditch, within yards of railroad tracks. On the video, a train can be seen later barreling down those tracks, just yards from Guerrero's stuck vehicle and a police vehicle blocking her egress.

Guerrero admits on video that she failed to stop. But she also claims she didn't hit any patrol vehicles and that she, instead, was struck by the patrol vehicles. The video, even when viewed in Guerrero's favor, plainly belies that contention. She also alleges that after she came to a stop, the officers unnecessarily dragged her out of her vehicle and then unreasonably punched and kicked her in her face, arms, legs, and ribs.

As to this last point, the video shows that once Guerrero's vehicle became stuck and came to a stop, she continued to pose an immediate danger to anyone unlucky enough to be in her vicinity. Indeed, visibility on the video at this point is initially obscured by a cloud of dust and smoke created by Guerrero's continuing attempts to free her vehicle by pressing down on the accelerator to make her wheels spin wildly. And as Guerrero is removed from her vehicle, the tires on her vehicle continue to spin furiously, creating a cloud that somewhat obscures the view

3

of the patrol vehicle and the deputies crouched beside Guerrero, who is on the ground. The video is clear enough, however, to show that none of the deputies ever kick Guerrero while apprehending her, and their crouched positions are inconsistent with any effort to do so. One deputy can be seen in a kneeling position, however, raising and lowering his closed fist as he presumably strikes Guerrero. This occurs initially and then again as the deputies continue to try place Guerrero in hand restraints. One or more deputies can be heard on the video repeatedly ordering Guerrero to stop resisting and put her hands behind her back as they attempt to retrain her.

In his uncontroverted affidavit, Deputy Dillard explains that because Guerrero was still attempting to free her vehicle once it became stuck, he tried to open the driver's side door. *See* Dkt. No. 60 at Ex. B ¶ 11. When he discovered it locked, he broke the window with his flashlight. *See id.* He again ordered Guerrero to get out of her vehicle and that when she failed to comply, he grabbed her left wrist and shirt to pull her out. *See id.* ¶ 12. The video corroborates this account. Deputy Dillard then forced Guerrero to the ground. Because she would not roll onto her abdomen as ordered, however, Deputy Dillard pulled her left hand towards him to get her to comply. *See id.* When Guerrero still would not comply with verbal orders to roll onto her abdomen, Deputy Dillard explains, Deputy Trevino struck her twice in the left side of her abdomen to gain her compliance. *See id.* This is also reflected on the video. After a brief struggle, the deputies were able to force Guerrero onto her abdomen, but she then refused to put her hands behind her back. *See id.* ¶ 13. Deputy Dillard explains that Guerrero "had her right arm pinned under her chest, and was refusing to comply with [the] officers' verbal commands. Guerrero was also resisting officers' attempts to force her hands behind her back." *See id.* Eventually, as shown on the video and explained by Deputy Dillard in his affidavit, the deputies

4

were able to gain control of both of Guerrero's arms and Deputy Trevino placed her hands in restraints behind her back. *See id*.

Once handcuffed, Guerrero was placed into a patrol vehicle. Guerrero can be heard on video stating that she had consumed two beers and that if she hadn't become stuck in the ditch she would have continued her flight. She can also be heard stating that she didn't stop because she didn't want the vehicle she was driving, which didn't belong to her, to be impounded. She later admitted she had an active warrant for her arrest. *See* Dkt. No. 60 at Ex. A-2.

As reflected on video, as well as in affidavits submitted by Defendants, within approximately thirty minutes of Guerrero's apprehension, Emergency Medical Services arrived and examined Guerrero. *See id*.; *see also* Ex. B ¶ 14-16; Ex. L. Approximately one hour later, Deputy Dillard transported Guerrero to the hospital, at her request, where she was seen and treated for minor abrasions and lacerations; no stitches were necessary, and Guerrero's CT-scan and x-rays were unremarkable. *See* Ex. B ¶¶ 22, 24; Ex. K. Once booked into jail, Guerrero repeatedly requested to be taken to the hospital, complaining at various times of difficulty breathing, a headache, and pain in her ribs. *See* Dkt. No. 60 at Ex. L & L1 through L-26. No serious injury, however, was documented. *Id.* She received medical care for two "Sick Call Requests" possibly related to her arrest. *Id*.

## II. Analysis

Guerrero brings this case pursuant to 42 U.S.C. § 1983, alleging that Deputies Brent Dillard and Mark Trevino[1] used excessive force during the course of her arrest and then failed to provide needed medical care following her arrest. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities

---

[1] Plaintiff initially sued A.J. Trevino. He was subsequently dismissed, and Mark Trevino, the correct party, was substituted. *See* Dkt. No. 34.

5

secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show she has been deprived of a right secured by the Constitution or the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

*Motion for Appointment of Counsel and to Amend.* Initially, the Court addresses Guerrero's Motion for Appointment of Counsel, filed on January 7, 2019, Dkt. No. 73, along with her request for leave to amend her complaint to add a claim against Sheriff Randy Brown. *Id*. Guerrero also appears to seek leave to add Medina County and/or the State of Texas as Defendants as well. *Id*.

As mentioned, this is not Guerrero's first attempt to secure appointed counsel in this civil proceeding. *See* Dkt. Nos. 16, 21, 40, 48. "A civil rights complainant has no right to the automatic appointment of counsel." *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)). And in a situation such as this, a court "is not required to appoint counsel in the absence of 'exceptional circumstances' which are dependent on the type and complexity of the case and the abilities of the individual pursuing that case." *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987); *see Akasike*, 26 F.3d at 512. As has already been conveyed to Guerrero (more than once), exceptional circumstances warranting the appointment of counsel are not presented here. *See* Dkt. No. 25, Text Orders of Apr. 17, 2018 & Mar. 2, 2018.

Her present request for appointed counsel fares no better. Guerrero continues to cite her lack of familiarity with the law as an "exceptional circumstance[]" warranting appointment of counsel. But, as previously noted, this case is not complex or otherwise extraordinary, and Guerrero has demonstrated by her pleadings that she is sufficiently capable of expressing and

6

representing herself despite her limited knowledge of the law and access to a law library. Accordingly, the Court **DENIES** Guerrero's request for appointed counsel. Dkt. No. 73.

Guerrero also seeks leave to amend her complaint. The Court notes that Guerrero previously requested and was granted leave to amend her complaint. *See* Dkt. Nos. 20 and 24. The Scheduling Order now reflects that the deadline for amending pleadings was April 5, 2018. Dkt. No. 18. A movant seeking leave to amend after the deadline must demonstrate good cause. *E.g.*, *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010). Guerrero appears to contend that good cause exists for the same reasons that she seeks the appointment of counsel, *i.e.*, the complexity of the case and her lack of familiarity with the law. Specifically, Guerrero requests leave to add a claim against the Sheriff under the theory of respondeat superior, stating that she only recently learned of this theory of liability. She also appears to seek leave to file unspecified claims against Medina County and/or the State of Texas.

The requested amendment would be futile. Supervisory officials cannot be held liable under § 1983 for the actions of subordinates based only on a respondeat superior theory. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Instead, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). In this case, Guerrero has alleged no facts to support such a claim and fails to otherwise demonstrate good cause for the requested late amendment. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.").

Accordingly, Plaintiff's Motion for Appointment of Counsel and to Amend is **DENIED** in all respects. Dkt. No. 73.

*Excessive Force.* Guerrero raises two claims for excessive force, one invoking the Eighth Amendment and another invoking the Fourth Amendment, although the alleged excessive force occurred *only* during Guerrero's arrest. Defendants move for summary judgment as to each.

There are several constitutional standards governing excessive-force claims, and which standard properly applies is determined by the "the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Where, as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." *Id*. (quotations and ellipses omitted). That standard calls for a showing that the plaintiff suffered an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009). "[T]he amount of force that is constitutionally permissible must be judged by the context in which the force is deployed." *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (quotations, brackets, and ellipsis omitted).

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgement "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

8

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). Defendants satisfy this initial burden here, including by submitting an uncontroverted affidavit from Deputy Dillard that describes how reasonable force was used to obtain Guerrero's compliance with the deputies' lawful orders. *See* Dkt. No. 60 at Ex. B.

A party against whom summary judgment is sought may not rest on the allegations or denials in her pleadings but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Liberty Lobby,* 477 U.S. at 248. Here, Guerrero contends in response to Defendants that "[t]he truth speaks for itself" and urges the Court to watch the video of the incident. Dkt. No. 69.

The video to which Guerrero directs the Court indisputably shows her recklessly and unjustifiably fleeing from a marked patrol vehicle, leading the Medina County Deputies on a twelve-mile chase, crashing her vehicle into multiple law-enforcement vehicles, repeatedly ignoring commands to stop her vehicle, and repeatedly ignoring all lawful attempts to pull her vehicle over. Dkt. No. 60 at A1. Indeed, Guerrero doesn't dispute fleeing from law enforcement or refusing multiple orders to stop her vehicle, and later refusing orders to exit her vehicle.[2] *See* Dkt. Nos. 20 and 47. And video evidence shows that once Guerrero's vehicle became stuck, she persisted in her dangerous efforts to flee, even as officers approached and ordered her to get out. Dkt. No. No. 60 at A1. Indeed, the video in question reflects that Guerrero continued to press on the gas pedal in an attempt to free her vehicle, causing caliche dust and smoke to surround her vehicle even as officers exited their vehicles and approached hers. *Id*.

---

[2] Plaintiff admits refusing to leave her vehicle, stating she wanted to wait until a female officer arrived. Dkt. No. 47 at 3.

What the video does not depict is Guerrero being kicked by Defendants Dillard or Trevino, as she alleges in her amended complaint. The video instead shows the deputies in a crouched position very low to the ground, making it impossible for them to have kicked Guerrero as she alleges. Guerrero cites no other summary judgment evidence—apart from video evidence—in support of her claims. But the video evidence does depict Guerrero being dealt several strikes. The question, therefore, is whether a reasonable jury could conclude that the force applied was excessive given the circumstances and Guerrero's ongoing refusal to obey the deputies' lawful orders.

There is no genuine issue of material fact with respect to the use of force here. Deputies Dillard and Trevino are therefore entitled to summary judgment on Guerrero's claim of misuse or excessive use of force under the Fourth Amendment. *See Collier*, 569 F.3d at 218. Further, to the extent she alleges she was subjected to excessive force in violation of her Eighth or Fourteenth Amendment rights, Defendants are also entitled to summary judgment because she was not in custody after a criminal conviction at the time the allege force occurred, and she was not a pretrial detainee; her excessive force claim, in other words, is analyzed only under the Fourth Amendment rubric. *See Bros. v. Klevenhagen*, 28 F.3d 452, 456 & n.5 (5th Cir. 1994).

The summary judgment evidence before the Court establishes that the force used to arrest Guerrero was neither clearly excessive nor clearly unreasonable given the circumstances. There was no Fourth Amendment violation here, as a matter of law. Guerrero indisputably posed a threat to the Medina County Deputies and other officers and motorists as she first led officers on a chase and then later endeavored to free her vehicle and reinitiate that chase. *See Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (lethal force appropriate to end a high-speed vehicle chase in which suspect "'posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase.'")

(quoting *Scott v. Harris*, 550 U.S. 372, 383-84 (2007)). Further, because of her ongoing attempts to free her vehicle and refusal to get out of the vehicle when ordered, the deputies' decision to break the car window and forcibly remove her was sensible, not excessive or unreasonable. *See id*. at 777 ("[A] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at *risk of serious injury or death*.") (emphasis added and quotations omitted). Likewise, because Guerrero continued to disregard the deputies' orders to get on her abdomen and put her hands behind her back, the use of controlled strikes to gain her full compliance was also neither excessive nor unreasonable. *See id*. (finding that use of lethal force not excessive when used to terminate a dangerous chase).

*Plumhoff* confirms this conclusion. *Plumhoff* involved a suspect who fled from police in his vehicle, leading officers on chase until his vehicle became trapped. At that point, "police acted reasonably in using *deadly force* to end th[e] risk" posed by the "grave public safety risk" inherent in a high-speed chase. *Id*. Unlike *Plumhoff*, fairly minimal force was employed here to secure Guerrero in custody after she had repeatedly demonstrated her unwillingness to obey lawful orders and her desire to flee, even at the risk of her own and others' safety.

*Qualified Immunity*. The defense of qualified immunity provides a second basis to support the grant of summary judgment for Defendants. Qualified immunity shields "a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 456 (5th Cir. 2001). To overcome qualified immunity, the plaintiff must show: (1) "a constitutional violation;" and (2) "whether the [constitutional] right in question was clearly established at the time of the violation such that a reasonable person would have known of it." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir.

11

2007). "If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

The reasonableness of an official's conduct "is a question of law for the court." *Id.* Further, "[c]learly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *Thompson*, 245 F.3d at 457. "The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations." *Callahan*, 623 F.3d at 253. "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396-97). Unless all reasonable officials in the defendant's circumstances would have then known the defendant's conduct violated the plaintiff's rights, a government official's acts are not objectively unreasonable. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

When analyzing a motion for summary judgment based on qualified immunity, the court will "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [that party's] favor." *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016)). But, "[w]hen a videotape of the incident exists," the court "'view[s] the facts in the light depicted by the videotape.'" *Guerra v. Bellino*, 703 F. App'x 312, 316 (5th Cir. 2017) (quoting *Harris*, 550 U.S. at 380-81). Accordingly, "[v]ideo evidence can be dispositive on a motion for summary judgment." *Id*.

Because Defendants have raised the affirmative defense of qualified immunity, the burden shifts to Guerrero to show a violation of a clearly established constitutional right. *See*

*Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). For all the reasons discussed above, Guerrero fails to show a constitutional violation, much less the violation of a clearly established constitutional right. *See Hathaway*, 507 F.3d at 320. As a result, even if Guerrero could demonstrate excessive force was used in this case—which she could not—Defendants would, nevertheless, be entitled to qualified immunity. *Brown*, 623 F.3d at 253; *Harris*, 745 F.3d at 771.

*Failure to Provide Medical Care.* Guerrero next alleges Defendants Dillard and Trevino violated her rights by denying her medical care immediately following her arrest and during her subsequent incarceration at the Medina County Jail. More specifically, she alleges that following her arrest, she was "denied medical treatment, denied emergency room when in pain physical[ly] hurt, cuts below the eye, was refused to be taken to the hospital [are] to call EMS." Dkt. No. 19.

A claim for failure to provide medical care to a pre-trial detainee is properly raised under the Fourteenth Amendment. *See Simpson v. Hines*, 903 F.2d 400, 404 (5th Cir. 1990). To establish a violation of her Fourteenth Amendment rights, Guerrero must show Defendants denied her reasonable medical care. *See Cupit*, 835 F.2d at 85. Here, the summary judgment evidence establishes conclusively that Guerrero was provided reasonable medical care both prior to her arrival at the Medina County Jail and while housed at the Jail. Guerrero offers no evidence on this point capable of reflecting a genuine dispute of material fact.

According to Deputy Dillard, the incident occurred at approximately 8:35 p.m. Dkt. No. 60, Ex. B ¶ 3. Shortly after placing Guerrero in the backseat of his patrol car, Dillard advised dispatch to have EMS come to the location to assess Guerrero for injuries. *See id.* ¶ 14. The video of the incident reflects that EMS arrived approximately 30 minutes after the crash and evaluated Guerrero for injuries. *Id.* at Exs. A-2, D[3], & L ¶ 9. At her request, Guerrero was then

---

[3] Defendants have failed to submit a business record affidavit with the EMS Report. Accordingly, the Court has not considered the statements in the EMS report for the truth of the

checked into the hospital at 9:48 p.m., a little over one hour after the crash. *Id.* at Exs. Ex, B ¶ 16, K at 14.[4]

While at the Medina Healthcare System Emergency Department, Guerrero was seen by Dr. Zarr, who observed multiple "superficial lacerations" to Guerrero's face, arms, and thighs. *Id.*, at Exs. I & K. Guerrero's wounds were dressed; sutures were not required. *Id.* at Exs. I, J, & K. Guerrero refused the antibiotic that was prescribed and, prior to being released, removed the dressings Dr. Zarr had applied to her wounds. *Id.* at Exs. I & J.

The record demonstrates that Guerrero received reasonable medical care following her arrest, and that she was provided timely and thorough medical care by both EMS and the Medina Healthcare System Emergency Department. Because Guerrero fails to provide any controverting evidence beyond her own bare assertions that she was injured and denied medical care immediately following the crash, there is no genuine issue of fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (nonmovant cannot show a genuine issue of material fact by producing conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

To the extent Guerrero alleges she was denied medical care after she was booked into the jail, she provides no explanation for how Defendants could be responsible for any such denial. Such a claim against these defendants, therefore, should be dismissed on summary judgement for that reason alone. Moreover, Defendants submit the affidavit of Lisa Nolan, P.A., who has worked as the medical officer for the Medina County Jail since 2007. Dkt. No. 60, Ex. L. In her

---

matter asserted but, rather, for the sole purpose of determining whether or not Guerrero was evaluated for injuries at the scene.

[4] Defendants have submitted a business records affidavit in conjunction with Guerrero's medical records from Medina regional Hospital. *See* Fed. R. Evid. 803(6). Further, any statements made by Guerrero for the purpose of securing treatment are excluded from the hearsay rule. *See id.* 803(4).

affidavit, Dr. Nolan states that from April 9, 2017, when Guerrero was booked into the jail, until August 9, 2018, the date of Dr. Nolan's affidavit, Guerrero requested medical treatment on the following twenty-six (26) occasions:

a. On April 13, 2017, Guerrero submitted a Sick Call Request complaining of bruising, trouble eating, difficulty going to bathroom, rib pain, and eye/head pain. On that same date, Dr. Nolan evaluated and treated Guerrero based on her symptoms, including ordering additional tests at Medina Regional Hospital.

b. On April 18, 2017, Guerrero submitted a Sick Call Request complaining of "inside" pain and trouble going to bathroom. On April 19, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms, including ordering additional tests at Medina Regional Hospital.

c. On April 26, 2017, Guerrero submitted a Sick Call Request requesting an increased dosage of her anxiety medication and her migraine medication. On April 27, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

d. On May 2, 2017, Guerrero submitted a Sick Call Request requesting medication for bladder control. On May 4, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

e. On May 16, 2017, Guerrero submitted a Sick Call Request complaining of bladder issues. On May 24, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

f. On June 26, 2017, Guerrero submitted a Sick Call Request complaining of bladder issues. Dr. Nolan evaluated and treated Guerrero based on her symptoms, including ordering additional tests at Medina Regional Hospital.

g. On July 6, 2017, Guerrero submitted a Sick Call Request complaining of problems with her "insides" and back. Dr. Nolan evaluated and treated Guerrero based on her symptoms, including ordering additional tests at Medina Regional Hospital.

h. On July 24, 2017, Guerrero submitted a Sick Call Request requesting to see Dr. Nolan to obtain the results of her mammogram and stomach x-rays.

i. On August 5, 2017, Guerrero submitted a Sick Call Request requesting that she be provided Milk of Magnesia instead of the stool softeners Dr. Nolan previously prescribed for her. On August 9, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

j. On August 25, 2017, Guerrero submitted a Sick Call Request requesting paperwork regarding her tests results. Dr. Nolan provided those results to her on August 30, 2017.

k. On September 17, 2017, Guerrero submitted a Sick Call Request requesting vitamins, dandruff shampoo, and medicated lotion for her skin. Dr. Nolan responded to her request on September 20, 2017 and advised that the requested items were available to her through the commissary.

l. On October 4, 2017, Guerrero submitted a Sick Call Request complaining of strep throat and requesting antibiotics. Dr. Nolan evaluated and treated Guerrero based on her symptoms.

m. On October 17, 2017, Guerrero submitted a Sick Call Request complaining of glass in her eye and requesting a change in her stool softener. On October 17, 2017, Dr. Nolan evaluated a[nd] treated Guerrero based on her symptoms. Dr. Nolan did not locate any glass in her eye, nor any injury to her eye.

n. On October 24, 2017, Guerrero submitted a Sick Call Request requesting Metamucil instead of stool softeners. On October 31, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

o. On November 28, 2017, Guerrero submitted a Sick Call Request requesting antibiotics for a boil. That same day, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

p. On December 11, 2017, Guerrero submitted a Sick Call Request requesting a blood pressure check. On December 12, 2017, Dr. Nolan evaluated and treated Guerrero based on her symptoms.

q. On December 25, 2017, Guerrero submitted a Sick Call Request complaining that there is still glass in her left eye and also requesting a blood pressure check. On January 9, 2018, Dr. Nolan evaluated and treated Guerrero based on her symptoms. At the time of my examination, Guerrero made no mention of glass in her eye. Instead, she stated that her vision was poor when she reads.

r. On February 18, 2018, Guerrero submitted a Sick Call Request complaining of right rib pain when breathing and sitting up. On February 20, 2018, Dr. Nolan evaluated and treated Guerrero based on her symptoms. Based on Dr. Nolan's examination, she did not find any evidence of injury to her ribs.

s. On March 9, 2018, Guerrero submitted a Sick Call Request requesting that her Metamucil be continued. Dr. Nolan approved her request on April 10, 2018.

t. On March 25, 2018, Guerrero submitted a Sick Call Request requesting a weight check, which was provided on March 28, 2018.

u. On April 30, 2018, Guerrero submitted a Sick Call Request complaining of stomach pain and dizziness. Dr. Nolan evaluated and treated Guerrero based on her symptoms.

v. On May 7, 2018, Guerrero submitted a Sick Call Request complaining that her shoulder has been dislocated since she got here, but that it was getting worse because of the cold. On May 8, 2018, Dr. Nolan evaluated and treated Guerrero based on her symptoms; however, she determined that Guerrero's shoulder was not dislocated as Guerrero claimed.

w. On May 29, 2018, Guerrero submitted a Sick Call Request requesting an appointment with a gastroenterologist. Dr. Nolan evaluated and treated Guerrero based on her symptoms.

x. On June 2, 2018, Guerrero submitted a Sick Call Request complaining of an ear infection. Dr. Nolan evaluated Guerrero on July 3, 2018 and Guerrero noted that her ear was better.

y. On July 10, 2018, Guerrero submitted a Sick Call Request requesting a mammogram and blood pressure check. On July 10, 2018, her blood pressure was checked.

z. On August 7, 2018, Guerrero submitted a Sick Call Request complaining that her stomach was swollen and requesting a blood pressure check.

*Id.* at 6-8. As Dr. Nolan notes, the majority of Guerrero's requests for medical care had nothing to do with her alleged injuries resulting from her arrest. *Id.* In fact, Dr. Nolan states the only Sick Call Requests for medical care that could possibly be related to injuries allegedly sustained as a result of the incident on April 8, 2017 are Guerrero's requests dated April 13, 2017, October 17, 2017, and December 25, 2017. Based on Guerrero's April 13, 2017 request, Dr. Nolan evaluated and treated her the same day, ordering additional tests at Medina Regional Hospital. The latter two requests pertain to Guerrero's complaints that she had glass in her eye; no glass was located during either exam, nor was any injury noted to her eye during either exam. Here too, Guerrero submits no controverting evidence, relying entirely on conclusory allegations.

Because the uncontroverted summary judgment evidence establishes Guerrero was not denied reasonable medical care at any time, let alone by Defendants Trevino and Dillard, Defendants' motion for summary judgment is **GRANTED** as to this claim.

*Assault and Battery*. Plaintiff also alleges claims, grounded in state law, for assault and battery, to which the Defendants have asserted the affirmative defense of immunity under Texas law. In this context, qualified immunity, which is also referred to as "official immunity," "shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties." *Telthorster v. Tennell*, 92 S.W.3d 457, 460-61 (Tex. 2002). Police officers are entitled to official immunity from suits "arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

Discretionary duties are those that "involve[] personal deliberation, decision and judgment." *Id.* In Texas, "an officer exercises discretion when he decides whether to make an arrest and the manner of the arrest." *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 764 (Tex. App.—Tyler 1997, writ denied). An officer "acts within the scope of [his] authority if [he] is discharging the duties generally assigned to [him]." *Chambers*, 883 S.W.2d at 658.

An officer engaged in an arrest that results in injury to the suspect must "establish that he acted in good faith for purposes of invoking official immunity's protection." *Tennell*, 92 S.W.3d at 464-65. An officer establishes good faith in the context of an arrest by "show[ing] that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* at 465. This standard only requires the officer to establish "that a reasonably prudent officer, under similar circumstances, might have reached the same decision." *Id.* (emphasis in original). Once the officer establishes good faith, the plaintiff "must offer evidence that no reasonable officer in [the officer's] position could have believed the facts were such that they justified his conduct." *Id.* "'[I]f officers of reasonable competence could disagree on this issue,' the officer acted in good faith as a matter of law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

18

In this case, Deputies Dillard and Trevino were on duty and in marked patrol vehicles at all times in question. Deputy Dillard observed Guerrero fail to yield, and both deputies made the decision to pursue and ultimately arrest Guerrero. Consequently, there is no question Defendants were acting within their authority in discharging the duties generally assigned to them. *Chambers*, 883 S.W.2d at 658. Nor is there any question Defendants were performing their discretionary duties in deciding to arrest the Guerrero and the manner in which they did so. *Lang*, 942 S.W.2d at 764.

Defendants also acted in good faith when they employed force to arrest Guerrero, for all the reasons previously discussed. As already discussed, the summary judgment evidence establishes the following: Deputy Dillard observed Guerrero fail to yield; Guerrero failed to pull over when Deputy Dillard first activated his lights; Guerrero thereafter refused all orders to pull over, as well as all attempts to stop her vehicle, leading the Medina County Deputies on a 12-mile chase; Guerrero crashed her vehicle into multiple law enforcement vehicles; once her vehicle was stopped, she persisted in her efforts to flee as officers approached her vehicle and ordered her to get out; and she continued to disregard lawful orders until reasonable force was used to gain her compliance. Dkt. No. 60 at Ex/ A1.

Given these incontestable facts, a reasonable jury could find "that a reasonably prudent officer, under similar circumstances, might have reached the same decision" as Deputies Dillard and Trevino to employ reasonable force to effectuate Plaintiff's arrest. *Tennell*, 92 S.W.3d at 464-65. Because the Medina County Deputies conclusively establish each element of the defense, they are entitled to qualified immunity as a matter of law. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Accordingly, Defendants' motion is also **GRANTED** as to Guerrero's claims for assault and battery.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Appointment of Counsel and to Amend, Dkt. No. 73, is **DENIED** and Defendants' Motion for Summary Judgment, Dkt. No. 60, is **GRANTED**.

A separate final judgment shall issue.[5]

**IT IS SO ORDERED**.

SIGNED this 21st day of March, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

---

[5] Although Defendants are prevailing parties in this action, the Court declines to award costs. A trial court has discretion to deny costs to a prevailing party provided it articulates "some good reason for doing so." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006). Such reasons include: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources. *Id.* (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 234 (1998)). In a sworn affidavit attached to her IFP Application Guerrero—who is presently incarcerated—states that she does not have any money in a checking, savings, or prisoner account. Dkt. No. 2. In light of Plaintiff's indigency, awarding costs would be inappropriate. *See, e.g.*, *Lamb v. Mendoza*, No. C-07-449, 2010 WL 11519202, at *3 (S.D. Tex. Nov. 15, 2010), *report and recommendation adopted*, 2010 WL 11519391 (S.D. Tex. Dec. 21, 2010) (recognizing that while an indigent inmate is not automatically excused from paying costs under § 1915(f)(2)(A), "indigence is still a factor that can be considered by a court").